**KNIGHTS AND DAUGHTERS OF TABOR et al. v. REID. (No. 2958.)** *

(Court of Civil Appeals of Texas. Texarkana. Feb. 25, 1925. Rehearing Denied March 12, 1925.)

1. **Beneficial associations** &#8656;14—Court held to have jurisdiction over validity of election to determine property rights involved.

In dispute between two claimants for office in beneficial order, court *held* to have jurisdiction to inquire into and determine validity of election in order to determine property rights, such as custody of books and money, involved.

2. **Beneficial associations** &#8656;14 — Laws and constitution of order held not to give supreme officer power to determine validity of election.

Laws and constitution of beneficial association *held* not to confer on supreme officer, having merely ordinary administrative duties, the quasi judicial power of determining validity and setting aside election of officers.

3. **Beneficial associations** &#8656;14—One deprived of office in beneficial order by fraud held entitled to resort to courts.

Where officer of beneficial association was re-elected but deprived of office by fraudulent count, having demanded a recount in due time, there being no provision in laws of association for determination of validity of elections, such officer *held* entitled to resort to courts.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by Knights and Daughters of Tabor, jurisdiction of Texas, and others, against S. S. Reid. Judgment for defendant, and plaintiffs appeal. Affirmed.

The suit was brought on July 25, 1923, by the Knights and Daughters of Tabor, jurisdiction of Texas, and O. M. Mayfield, Grand Treasurer of the order, and H. L. Smith, claiming to be the duly elected and installed Grand Scribe of the order on June 28, 1923, against S. S. Reid, alleged to be the preceding and retiring Grand Scribe whose tenure of office had regularly ended June 28, 1923. The petition sought by mandatory injunction to compel S. S. Reid to deliver all property, books, and records in his possession belonging to the order to H. L. Smith and requiring him to turn over all funds and moneys in his possession or under his control to O. M. Mayfield as Treasurer. S. S. Reid answered by general denial and specially pleaded, in effect, that he, and not H. L. Smith, was legally elected Chief Grand Scribe in June, 1923, and that the true result of the balloting had been fraudulently and falsely announced as a part of a previously designed scheme to fraudulently deprive him of the office; that he received a majority of the votes cast; that he protested the result, and was fraudulently denied a recount; that he appealed to the International Chief Grand Mentor of the order, and that he, as within his authority to do, duly declared the election void and of no effect, and ordered all grand officers who held office prior to the election to continue in office and perform the duties thereof until their successors may be duly elected and qualified according to the constitution and laws of the order; that such election has not been held; that he was holding over in virtue of his election and qualification to the office prior to June 28, 1923, and of his election on June 28, 1923, for a year; that the salary of the office is $2,500 a year.

---

&#8656;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

270 S.W.—16    *Writ of error dismissed for want of jurisdiction April 29, 1925.

Certain special issues were submitted to the jury, and certain facts were specially found to exist by the court; and in keeping with the verdict and the special findings the court entered judgment in substance declaring S. S. Reid elected to hold the office and entitled to the books, records, property, and emoluments pertaining thereto, and denying the appellants the relief asked.

The society is called the Knights and Daughters of Tabor of the International Order of Twelve, and is a fraternal benefit order providing, by contribution, mutual life insurance to the various members. The society is composed of subordinate lodges, divided into four separate classes called temples, tabernacles, palatiums, and tents. The temples and tabernacles are composed of men only, and the palatiums and tents are composed of women only. These local lodges are under the authority and control of a Grand Lodge, called Grand Temple and Tabernacle of the state, composed of delegates from the local bodies. The Grand Lodges in turn are under the authority and supremacy of the International Grand Temple and Tabernacle, the supreme governing body. The rights and powers of the officers and members of the lodges, superior and subordinate, are regulated by constitution and by-laws. The international constitution and general laws and rules are supreme authority. The Grand Lodges of the state can make laws not in conflict with the supreme laws. The general or supreme laws provide as follows:

"Sec. 1. The Grand Temples and Tabernacles are hereby invested with full authority to make their own constitution, by-laws and rules for their own government, which shall not conflict with the international constitution or general laws.

"Sec. 2. Full power is given to the Grand Temples and Tabernacles to conduct their business. The International Grand Temple and Tabernacle cannot interfere with their business in any form, so long as they do not trespass upon or conflict with the international constitution or general laws."

As it appears, the general laws of the order create the officers of the Supreme as well as of the Grand Lodges, fix their duties, and provide for their annual election by the Grand Session. It is admitted that the Chief Grand Scribe of the Grand Lodge is, under the general laws, entitled to the books, records, and property in suit. Article 7 of the general laws pertains to the election, and reads:

"Sec. 1. The vote in the Grand Session shall be as follows by the representatives: A temple, four votes; a tabernacle, four votes; a palatium, four votes; a tent, four votes.

"Sec. 2. All past presiding officers have one vote; each Deputy Grand Mentor one vote; each Deputy Grand Priestess one vote; each Grand Officer one vote.

"Sec. 3. The Chief Grand Scribe shall prepare a roll of all voters, and as he calls the voting is done by ballot. First, templers; second, for tabernacles; third, for palatiums; fourth, for tents; fifth, for past presiding officers; sixth, for deputies; seventh, for Grand Officers; eighth, for Past Grand Officers.

"Sec. 4. There must be five tellers appointed by the Chief Grand Mentor, whose duty it shall be to count the ballots and report the result."

Further, the general laws of the order provide as follows:

"Sec. 1. The International Chief Grand Mentor can organize and set to work Grand Temples and Tabernacles, and constitute them by international charter.

"Sec. 2. Decisions made by the International Chief Grand Mentor shall be final on all questions that are submitted to him from the Chief Grand Mentor of Grand Temples and Tabernacles.

"Sec. 3. The decisions of the International Chief Grand Mentor on the international and general constitutional laws and rules shall remain in force until reversed by his successor."

It appears that the regular Grand Session of the order in Texas convened at Beaumont on June 25, 1923, and at the session the regular election of the state Grand Officers came up for action. In that respect the court at special request made findings of fact which are:

"J. S. Adair is the Chief Grand Mentor of the Tents and Tabernacles in Texas. S. A. Jordan, whose office is in Little Rock, Ark., is the International Chief Grand Mentor. The defendant S. S. Reid for many years held the office of Chief Grand Scribe of Texas and was holding that office when the Grand Session of the order convened at Beaumont on June 25, 1923; and the office carries with it a salary. During the course of the election it became necessary to elect a Chief Grand Scribe in regular tenure, and S. S. Reid and H. L. Smith were the candidates for said office. It was the duty of S. S. Reid, the Chief Grand Scribe. to prepare a roll of all voters as set out and provided for in the rules and regulations of the order. He prepared the rolls and offered to call the same, but the Chief Grand Mentor, Adair, denied him the right to do so, on the ground that it would require too much time and cause unnecessary delay, it then being in the early hours of the morning. I find that it is the duty of the Chief Grand Mentor to appoint five tellers whose duty it is to count the ballots and report the results. The Chief Grand Mentor appointed two special scorers for the purpose of tabulating the votes as called off by the tellers. The rules and regulations do not authorize or provide for the appointment of scorers to count the ballots. It is the duty of the tellers to count the ballots and report the results. The jury has made the finding that S. S. Reid received a greater number of the qualified votes of the delegates than H. L. Smith received, and that H. L. Smith was not elected Chief Grand Scribe over S. S. Reid; and that S. S. Reid did not acknowledge and acquiesce in the election and installation of

H. L. Smith as Chief Grand Scribe. I find that J. S. Adair, presiding, declared H. L. Smith elected; and I further find that he was installed by S. A. Jordan, the International Chief Grand Mentor, with all formalities, attended by a band of music. After acquiring certain information S. S. Reid reached the conclusion that he had actually received more votes than H. L. Smith, and that he was in truth and in fact elected Chief Grand Scribe, and he appealed (during the session) to Adair to recount the ballots, but was refused and was told that the election (occurring a few hours before) was a closed matter."

The evidence on the part of the appellee is to the effect that before the election there was a conspiracy to count him out regardless of the true results of the election, and that the presiding officer and the tellers and the scorers appointed were in the conspiracy and carried out the conspiracy; that the ballots were falsely counted, and scorers announced the result of the election as 1,094 votes for Smith, and 871 votes for Reid; that as a fact the ballots showed the true result of 1,037 votes for Reid, and 693 for Smith; that the voting was not done in accordance with article 7 of the general laws. The evidence on the part of the appellants is, in effect, a denial of the above occurrences.

It appears that on the same morning of the election "Reid verbally took the matter up with the International Chief Grand Mentor, who was present at the Grand Session, and that he was told by that official that he could do nothing in the matter until it was taken up with him in writing." Later, on July 2, 1923, the appellee and the Chief Mentor of a local lodge filed a complaint or "appeal" with the International Chief Grand Mentor. Therefore on August 20, 1923, the International Chief Grand Mentor signed and caused to be published the following document:

"Whereas, on June 25, 1923, the Texas Grand Session for the International Order of Twelve, Knights and Daughters of Tabor, convened at Beaumont, Texas; and

"Whereas, on the 28th day of June, 1923, an election was held by said order, for the purpose of electing the grand officers of the order; and

"Whereas, I, the International Chief Grand Mentor of the International Order of Twelve, have been presented with the evidence of all the proceedings had during said election; and

"Whereas, I was personally present at said election, and observed the procedure employed in the election of said Grand Officers and find that fraud was practiced in said election, and that the constitution and by-laws of the order were in many cases disregarded and violated, and that the election was not held in accordance with the prescribed law of the order governing such elections:

"Now, therefore, I, S. A. Jordan, International Chief Grand Mentor of the International Order of Twelve, Knights and Daughters of Tabor, do hereby issue the following order, to wit:

"First. That the election of the Grand Officers of Texas, on June 28, 1923, was in violation of the constitution and by-laws of the order, and, therefore, null and void, and of no force and effect.

"Second. That the Grand Officers who held office prior to June 28, 1923, shall continue in office until such time as their duly elected successors shall qualify according to the laws of the order.

"Third. That J. S. Adair shall act as Chief Grand Mentor by virtue of his election prior to June 28, 1923. That J. W. Reynolds shall act as Vice Grand Mentor by virtue of his election prior to June 28, 1923. That S. S. Reid shall act as Chief Grand Scribe by virtue of his election prior to June 28, 1923. That H. L. Smith shall act as Chief Grand Treasurer by virtue of his election prior to June 28, 1923. That Mrs. F. H. Leavendar shall act as Grand High Priestess by virtue of her succession to the office prior to June 28, 1923. That S. E. Gordon shall act as Chief Grand Recorder by virtue of her election prior to June 28, 1923.

"Fourth. That all other officers elected and qualified at the Grand Session on June 28, 1923, shall continue in office, and perform duties of their offices by virtue of their election prior to June 28, 1923.

"Fifth. That a copy of this order be mailed to all interested parties, and that J. S. Adair, Chief Grand Mentor of Texas, instruct all of the interested parties to assume the duties of their office in compliance with this order, and that J. S. Adair, Chief Grand Mentor, recognize the officers as above set forth until their successors may be duly elected and qualified according to the constitution and by-laws of the order.

"Witness my hand at Little Rock, Arkansas, this the 20th day of August, A. D. 1923.
"[Signed] S. A. Jordan,
"International Chief Grand Mentor."

The laws of the state Grand Lodge as to trial and appeal of members appear in the record and can be referred to. There does not appear in the record any law pertaining to election contest, or any provision for officers or tribunals to decide matters pertaining thereto.

F. H. Prendergast and George Prendergast, both of Marshall, and J. D. Willisomson, of St. Louis, Mo., for appellants.

Davidson, Blalock & Blalock, of Marshall, for appellee.

LEVY, J. (after stating the facts as above). The parties practically agree upon the general rule of law governing suits of this character as laid down in the cases and textbooks. 5 Corpus Juris, p. 1364; 19 R. C. L. pp. 1224, 1225; 1 Bacon on Benefit Societies, § 107; Fraser v. Buck (Tex. Civ. App.) 234 S. W. 679; Brown v. Clark, 102 Tex. 333, 116 S. W. 360, 24 L. R. A. (N. S.) 670; and other cases. Quoting from Corpus Juris, supra:

"The courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members

or questions of policy, discipline or internal government so long as the government of the society is fairly and honestly administered in conformity with its laws and with the law of the land, and no property or civil rights are invaded. Conversely, the proceedings of the association are subject to judicial review where there is fraud, oppression or bad faith or property or civil rights are invaded, or the proceedings are violative of the laws of the society, or the law of the land or are illegal. Even in these cases, however, the courts will not take jurisdiction unless the complaining member has exhausted such remedies as may be provided by the laws of the association itself."

But where the laws of the order make no provision for officers or tribunals to decide a contest or determine the grievance, the member aggrieved can have recourse to the courts in the first instance. 29 Cyc. p. 204; 5 C. J. § 83, p. 1359; 19 R. C. L. p. 1229. Also a member or officer in the proper case is justified in resorting to the courts, where it appears that an opportunity to present his claim or complaint and have a fair determination of it has been fraudulently denied. 1 Bacon on Benefit Societies, § 107; 19 R. C. L. § 44, p. 1225. The application of these fundamental rules must then be made to the instant case.

[1] A property right only being involved in the case, the custody of books and money, the court has jurisdiction for that purpose; and as the right to an office or the validity of an election must be determined only in order to give the relief which the law can afford, the court has the power to inquire into and determine the validity of the election for the purposes of the suit.

[2] First, it appears that the International Chief Grand Mentor decided, on August 20, 1923, that the annual election held in June, 1923, by the Grand Lodge of the jurisdiction of Texas, was fraudulent and in violation of the constitution and general laws of the order, and determined that the election was void. If he had the power to so decide, then the court can inquire no further. Did he have the power? The appellee relies upon the following supreme law as conferring such power:

"Sec. 3. The decisions of the International Chief Grand Mentor on the international and general constitutional laws and rules shall remain in force until reversed by his successor."

This section does not, we think, have application to this proceeding. The section merely empowers the officer mentioned to interpret the laws and to give opinions or "decisions" on all matters of law referred to him by the proper Supreme or Grand Officers pertaining to ordinary administrative affairs having relation to the supreme laws of the society. The section does not empower the officer mentioned to take original or appellate cognizance of an election proceeding,

which is quasi judicial in its nature, and set aside an election of officers. And neither does there further appear any provision in the regulations or laws of the society for officers or tribunals to decide a contest of election or matters of that nature. In such case, then, a member or officer seeking to enforce a property right or privileges as members can have recourse to the courts in the first instance. Roxbury Lodge v. Hocking, 60 N. J. Law, 439, 38 A. 693, 64 Am. St. Rep. 596.

[3] The only question then arising is that of whether or not there was any conduct which interfered with the purity of the election, such as assuming to count ballots in a false and fraudulent manner. In view of the evidence and the verdict of the jury, having evidence to support it, the appellee S. S. Reid received a majority of the votes cast, and the ballots were counted by those charged with the duty in a false and fraudulent manner, in pursuance of a conspiracy on the part of the presiding officer and the tellers and scorers. If this be true, then the election was not honest, and the appellee, actually receiving a majority of the votes, would be entitled to the office.

The appellee, as found by the court, was denied his appeal "to recount the ballots" at the time of the announcement of the result, and under circumstances apparently arbitrary and not in good faith, entitling a resort to the court without the charge of neglect to have a recount or acquiesce in the declaration of the result or installation proceedings afterwards.

We have considered all the points presented, and have concluded that they should be overruled.

The judgment is affirmed.