## LUNDINE et al. v. McKINNEY et al.

### No. 2463.

Court of Civil Appeals of Texas. Eastland.

Sept. 22, 1944.

Rehearing Denied Oct. 20, 1944.

John D. McCall, David L. Broadus, and E. B. Votaw, all of Beaumont, for appellants.

Baker & De Lee and Shivers & Keith, all of Port Arthur, for appellees.

GRISSOM, Justice.

Arthur G. Lundine and others, who alleged they were members in good standing of both the Operative Plasterers and Cement Finisher's Local Association No. 435 and the Operative Plasterers and Cement Finisher's International Association, hereinafter referred to as local and International, respectively, brought this suit as individual members of said local; they alleged that they brought the suit also in behalf of and for the benefit of said local and as representatives of all members of said local. The defendants named in plaintiffs' petition were James F. McKinney, George James, Mike Reilly, and said International. The individual plaintiffs named in the petition include D. C. Hood, the elected business agent for the local, who will hereinafter be referred to. Seventy-four individuals were named as plaintiffs. Seven of the named plaintiffs filed "disclaimers" in which they alleged the suit was filed without their consent or knowledge, and that they did not seek any of the relief prayed for in plaintiffs' petition; they prayed that their names be deleted from the record as plaintiffs, or, in the alternative, that plaintiffs' petition be dismissed.

The local (alleging it was acting through its duly elected officers, I. C. James, president, George James, secretary-treasurer, and James F. McKinney, vice-president, and its executive board), filed an answer. The local alleged that its answer was also filed on behalf of its members who desired to contest plaintiffs' suit. Said answer presented first a plea in abatement, in which the local alleged in effect, that plaintiffs had "no right or authority" to bring a suit of this character; that such a suit could be maintained only by the Attorney General, or a District or County Attorney.

Mike Reilly and the International filed a plea of privilege asserting their right to be sued in Dallas County. Subject thereto, and only in the event their plea of privilege was overruled, but expressly without waiving said plea, Reilly and the International filed a plea in abatement, in which they set forth numerous provisions

of the constitution and by-laws of the International. Among others, they pleaded section 82 of the International's constitution and by-laws, which, they alleged, provides that when a member has a grievance against a local he shall file a complaint with the secretary-treasurer, and give notice, etc. Said defendants alleged that said section 82 provides, among other things, that an appeal by a member or a local union to the convention of the International, when considered by said convention, should be final and from which there "shall be no further appeal." Said defendants alleged plaintiffs' suit should be dismissed because plaintiffs had not complied with the constitution and by-laws relating to grievances and appeal, and, specifically, that plaintiffs had not alleged that they had filed a copy of the complaint with the general treasurer, nor that any complaint was filed within sixty days from the time the grievance occurred, nor that they had appealed to the International convention, all of which, they alleged, was required by the International's constitution. Reilly and the International further alleged that before the court could take jurisdiction plaintiffs must "allege and establish" that they had exhausted all remedies provided by the constitution and by-laws of the International before appealing to the court, and that the court was without authority to intervene in the internal affairs of said defendants, for all of which reasons plaintiffs' suit should be abated and dismissed. Subject to the plea of privilege, and only in the event it was overruled, and subject to the plea in abatement, and only in the event it should be overruled, Reilly and the International answered by many special exceptions, one of which was that Article 5154a conferred jurisdiction upon the court to hear such a suit only when brought by an enforcement officer named in said statute, to wit, the Attorney General or a District or County Attorney. Reilly and the International further alleged that the executive board of the International, following the applicable provisions of its constitution and in compliance therewith, did remove the officers of the local union and appoint officers in their places; that the plaintiffs had sufficient remedies within the union to secure redress of any alleged grievance, but that plaintiffs had not followed provisions of the constitution and by-laws of the International relating to grievances. They further pleaded res adjudicata by reason of a judgment rendered in the 60th District Court of Jefferson County.

The court refused to hear testimony, sustained the local's plea in abatement and dismissed the case. Plaintiffs have appealed. The judgment recites that there came on to be heard the application of Lundine et al. for a temporary injunction and appointment of a receiver; that plaintiffs appeared in person and by their attorneys; that the local union, George James and James F. McKinney "et al.", appeared by their attorneys; that Reilly and the International "filed their plea of privilege to be sued in Dallas County"; that thereupon plaintiffs in open court stated the nature of their case and offered to submit evidence in support thereof. That the local union, George James and James F. McKinney, "and others represented by O. T. Baker", presented their plea in abatement, which was considered, without the introduction of testimony, whereupon the court sustained said plea and dismissed the case.

As we construe the judgment and the record the only matter presented to and passed on by the court was the local's plea in abatement. The substance of said plea was that such a suit could be maintained only by the Attorney General or a District or County Attorney. As we understand the record, Reilly and the International were not before the court on their plea in abatement. They were still insisting on their plea of privilege. Under such interpretation their plea in abatement filed without waiving their plea of privilege and only in the event their plea of privilege was overruled, which does not appear to have been done, is not to be considered.

The question presented is whether plaintiffs, under the pleadings, may recover any of the relief sought by them as members of the unions, or whether such a suit must be brought by the Attorney General, or a District or County Attorney. Stated differently, it is necessary to decide whether the members of a union could maintain such a suit prior to the enactment of Art. 5154a, Vernon's Ann.Civ.St., and, if so, whether said statute deprived plaintiffs of that right and conferring it solely upon the enforcement officers named in the statute. To answer these questions it becomes necessary to set forth the substance of plaintiffs' petition which covers 26 pages of the transcript.

268

Plaintiffs alleged that the local is the owner of certain personal property; that the International is the parent association supported by local trade unions chartered by it, one of which is Local 435; that plaintiffs are members in good standing of said local and International; that the locals are required by the constitution and by-laws of the International to collect from each of its members $1 per month for the International; that in addition thereto, the local collected from each of its members $5 per month for the use of the local; that under the laws of the International and local the title to the $5 per month became vested in the local and the International had no interest therein; that said funds were held by the officers of the local for the benefit of the members of the local and in trust for them. Plaintiffs alleged they did not have access to the records of the local, but it had approximately 225 members, a majority of whom were either named as plaintiffs or "are parties hereto by the representation of plaintiffs." That on September 8, 1943, and long prior thereto, in addition to the $1 collected monthly from each member by the local for the International, the members of the local paid into its treasury and to defendants James and McKinney approximately $1,250 per month as dues, assessments, initiation fees, etc.; that said fund was the property of said local and "its members", the title and possession of which was held by James and McKinney as trustees for the local and its members; that prior to September, 1943, it had long been the custom of the local to hold regular meetings twice each month at a meeting place rented for that purpose, and that the local maintained a regular office for the transaction of business; that about one year prior to the institution of this suit I. C. James was elected president, but prior to September, 1943, he abandoned that office and moved from Jefferson County; that McKinney was elected vice-president; that after I. C. James abandoned his office McKinney assumed the duties of president and took charge of said office; that George James was the duly elected and acting secretary-treasurer of the local and had performed the duties of that office for many years without the payment of compensation; that plaintiff D. C. Hood, in September, 1943, was the duly elected and acting business agent of said local, "it being the only full-time office provided by the rules of said local" and carried with it compensation of $125 per week; that being the only position in said local paying a salary prior to September, 1943; that the local and its members had long prior to September, 1943, created the office of business agent and by long established custom had defined the duties of such business agent; that the duties of Hood as business agent required him to keep in contact with all jobs and projects falling within the craft of said union, within the jurisdiction of the local, and to secure employment on said jobs for members of said local; that all employers and contractors within the jurisdiction of the local called on said business agent for workmen and would not hire workmen who were not approved by the business agent; that the selection of a business agent by democratic process is a highly important privilege secured to each member of the local; that the business agent could prevent any member from obtaining employment by merely failing, or refusing, to approve such member or certify him as being in good standing; that under the constitution of the International and local the secretary-treasurer of the local, George James, is required to keep regular minute books showing a complete record of all meetings of the local, to keep complete account books showing all receipts and disbursements; that he was required to prepare in duplicate monthly reports showing the amount of all receipts and disbursements for the current month and retain one copy for the permanent file of the local and forward the other to the International; that all funds coming into the hands of the secretary-treasurer were required to be deposited in the bank to the credit of the local; that they could be withdrawn only by checks signed by the secretary-treasurer and counter-signed by the president or vice-president of the local; that under the established rules of the local said officers were required to present all bills, claims and other obligations of the local at a regular meeting for the approval of the membership before the officers were permitted to make payment out of the funds of the local; that said officers were not required to and did not execute fidelity bonds for the protection of the local; that due to war production the membership of the local had been recently materially increased; that the new members had been given "very little voice" in the affairs of the local; that McKinney and George James sought to perpetuate themselves in office and run the affairs of the local according to their personal desires, regard-

less of the rules of the local and contrary to the expressed desires of its members; that financial reports submitted to the members were so vague and indefinite that they did not disclose the financial condition of the local; that plaintiffs were informed that withdrawals were being made from the treasury of the local by McKinney and James; that bills were being paid by said defendants, which had not been submitted to the members for approval; that the members in open meeting by motion duly made, carried and adopted, demanded that the secretary-treasurer be required to submit a detailed financial report in conformity with the rules of the local, which said request was refused by defendants; that thereafter the members demanded in open meeting that the records be produced for inspection and audit; that said request was refused; that McKinney, who presided at the meeting, refused to permit a discussion of the matter; that at subsequent meetings, when the members demanded an audit, McKinney would immediately declare the meetings adjourned; that the members of the local were denied the right to inspect the records; that in August, 1943, the members of the local made known to John E. Rooney, president of the International, the arbitrary conduct of James and McKinney, with the view of obtaining relief from the International and having an auditor appointed; that such communication "was not in form of a formal complaint and was not filed as such against either local 435 or any of its officers"; that Rooney directed Reilly to go to Port Arthur and investigate; that Reilly appeared before the meeting of the local and, when requested "by the members to order an audit of the books, denied the request," criticized the members for making such demand, and refused to hear any discussion of the activities of James and McKinney; that there was no investigation by Reilly "in which the membership of the local participated," but that Reilly made a written report to Rooney, the contents of which are unknown to plaintiffs; that no one filed "a formal complaint against Local 435 or any of its officers with said International and that no hearing or trial was ever had of whatsoever nature based upon such complaint nor was said report so made by the said Reilly acted upon by the said John E. Rooney or the International as a formal complaint but that nevertheless the said Rooney without formal action as required by the constitution of the International and

based solely upon said secret charges so made by the said Reilly * * * contrary to the constitution of the International * * * ordered * * * Reilly to' take charge of Local 435 lock, stock and barrel including all of the property and assets of said local and place the same in the hands and in the possession of the Defendant James McKinney * * *." That pursuant to said purported authority Rooney took possession of all the property of the local and turned it over to McKinney and appointed McKinney as his manager;' that since said time McKinney has been carrying on the business of the local under such purported authority and refuses to permit plaintiffs and the local to exercise any control over its property; that, acting pursuant to the purported authority granted by Rooney, McKinney closed the office and meeting hall of the local and established a pretentious office for himself and purchased new and expensive furnishings for his office out of the funds of the local and moved all of the records of the local to his office; that he employed a regular office assistant and is paying her out of the funds of the local; that he employed George James as his bookkeeper and secretary and is paying for his services out of the funds of the local; that McKinney and James have all of the property and records of the local and are withholding possession from the local and its members; that all of the acts alleged have been committed by defendants without the consent or approval of the local or its members. That McKinney and George James do not claim to be acting as the elected officers of the local, but, on the contrary, assert: (1) That they were removed from office by the International at a trial held on August 11, 1943; (2) that such removal was made by the International by virtue of authority granted in its constitution based upon written complaints duly filed and at an open hearing on said date; (3) that McKinney and James personally appeared at said trial, which resulted in a judgment removing them from office as vice-president and secretary-treasurer of the local; (4) that they prosecuted no appeal; (5) that said judgment has become final; (6) that said defendants were satisfied with the judgment; and (7) that they are no longer officers of said local.

Plaintiffs then allege that there never was any such hearing or trial; that no formal complaint was ever filed against defendants, all of which McKinney and James well know, but that McKinney and

George James have abandoned any office in said local and are estopped to claim that they hold any office in said local; that McKinney, immediately after taking charge of the property of the local, without authority of said local or its members, discharged plaintiff D. C. Hood as business agent of said local, although he had theretofore been duly elected to said office by the members of the local and was performing the duties of his office under such authority; that McKinney proceeded to appoint himself as business agent, without sanction of the membership of the local, and is appropriating $125 per week from the funds of the local; that McKinney, acting solely upon the purported authority contained in a letter from Rooney to Reilly (directing Reilly to place McKinney in charge of the local and ordering an executive board, to transact the business of the local, appointed by "Manager McKinney"), proceeded to select a so-called executive board, consisting of "a few hand-picked friends."

Plaintiffs alleged that there is nothing in the constitution of either the International or local that authorizes the International or any of its officers to summarily take over the property of the local or suspend its meetings "in the absence of a formal complaint duly filed, a fair and impartial trial with a free and untrammeled opportunity to defend the charges contained in the said complaint after due notice thereof and a decision duly handed down by the proper body presiding over said trial, * * *." Plaintiffs alleged no complaint was filed against the local or any of its members, nor was any trial ever had or decision rendered; that if there had been such a trial, the International was powerless to clothe any agent with authority to seize the property of the local, since the title thereto was vested in said local and its members. That defendants had unlawfully seized the property of the local and its members, had suspended all meetings of the local "without right or color of right under their constitution and contrary to the laws of this state." That, nevertheless, plaintiffs elected to pursue whatever recourse, if any, they had within their organization; that they filed a written protest with the International, setting forth the matters complained of herein and requesting a rehearing and reconsideration; that thereafter Rooney foreclosed all recourse said local and its members had by appeal in said organization, if any, by finally denying their appeal. Plaintiffs alleged that only after exhausting all right of recourse or appeal granted by the constitutions of the International and local within their own organizations and after all such protests and appeals had been finally foreclosed, on October 2, 1943, they filed suit in the 60th District Court of Jefferson County, seeking redress for the wrongs complained of herein and to enjoin further unlawful acts and to restore the property of the local to the custody of its duly elected officers. That thereupon defendants began a campaign of threats, intimidation, discrimination and other wrongful acts directed against plaintiffs in said suit in an effort to harass and boycott them, with the view of forcing them to withdraw from said suit and acquiesce in the wrongful acts of defendants under penalty of being black-balled and forced out of employment; that defendants refused to accept dues from various plaintiffs in said suit and notified them they were in bad standing and would not be sent out on jobs unless they withdrew from said suit; that McKinney notified contractors and employers that certain members of said local, who were in good standing but who joined in said suit, were not in good standing and directed contractors and employers not to employ them and to discharge them if already employed; that McKinney succeeded in intimidating plaintiffs in said suit by telling them that as "Manager" he would not send any of them out on jobs if they joined in said litigation. Plaintiffs alleged that Rooney, president of the International, was without power and authority to take over the property of the local, by agent or otherwise, and that he could not be authorized to do so by the International; that all power attempted to be conferred upon Reilly, McKinney, and George James by the International, or Rooney, was wholly without authority and unlawful; that their acts aforesaid were committed as trespassers; that McKinney's act in appointing his executive board and all action taken by them was unauthorized and their actions void; that the acts of McKinney in discharging Hood, the duly elected business agent of the local, in seizing the records and property of the local, in closing its meeting hall and office, and in preventing the members from holding meetings were unauthorized and unlawful; that his acts in acquiring a new office and furniture and paying for same out of the funds of the local and in employing George

James as an office assistant and paying James out of the funds of the local and in appointing himself, through his self-appointed executive board, as business manager, and in appropriating $125 weekly from the local, through his self-appointed secretary-treasurer, were wholly unauthorized and unlawful; that the acts of defendants in demanding, extorting and receiving monthly dues from each member of said local under color of such unlawful authority, as a condition precedent to their obtaining employment, was unlawful; that plaintiffs know McKinney has no authority to require them to pay or tender monthly dues or assessments to him, but nevertheless they are required to do so in order to obtain employment "and will continue to be forced to pay said tribute to said defendant unless this honorable court intervenes by means of its equitable powers."

Plaintiffs alleged that the local is no longer operating as a trade union in conformity with law; that its business is being carried on by trespassers who are preventing further meetings of the local; that no duly elected officers chosen by the members of the local exist; that all such officers had abandoned their offices; that defendants are not complying with Art. 5154a; that they are preventing and will continue to prevent plaintiffs from assembling in open meeting duly called for the purpose of electing officers and carrying on the business of the local in conformity with their constitution and the laws of Texas; that by virtue of the rules and regulations of the local, established by long custom and usage, and under the provisions of Sec. 9, Art. 5154a, it is the duty of a labor union to keep accurate books of account showing receipts and disbursements; that under said statute plaintiffs have the right at reasonable times to inspect the records of the local; that McKinney and George James are not qualified to keep such records; that no records have been kept by defendants; that if complete records, as contemplated by the statute, have been kept, such records have been fraudulently withheld by defendants from the plaintiffs; that "practically on all occasions" when an inspection has been demanded it has been summarily refused by defendants; that the so called financial reports and account books that have been submitted to the local for its inspection were "only a jumbled and confused mass of unintelligable figures, numerals and rhetoric * * * from which no useful information whatever

could be obtained", and from which the condition of the affairs of the local could not be ascertained; that the records are the property of the local, and unlawfully in possession of defendants, who are trespassers; that said records should be deposited in the registry of the court, or with an auditor empowered to make a proper audit.

Plaintiffs alleged that "unless enjoined from so doing * * * defendants will black ball and boycott each and every one of said plaintiffs and effect their expulsion from Local 435 and from the International * * *." Plaintiffs alleged that the real reason for such action was that plaintiffs dared to protest the arbitrary and unlawful action of defendants and assert their rights in court; that plaintiffs will be prevented from following their selected craft and will be deprived of the right to earn a living unless the court intervenes; that McKinney and George James have appropriated $1,250 per month from the membership of the local for a long time and refused to account therefor; that they have made many withdrawals from the funds of the local without its consent or the consent of the members; that no intelligible report or financial statement has ever been submitted to the local or its members; that the suit instituted by plaintiffs in the 60th District Court of Jefferson County resulted in a nonsuit being taken by plaintiffs; that their cause was dismissed without prejudice to refiling same.

Plaintiffs prayed for a temporary injunction and appointment of a receiver, upon a hearing, pending final determination of the cause by trial on its merits; that a receiver be appointed to take charge of all the records and property of the local; that he be authorized to manage the business affairs of the local pending further orders of the court; that he be given authority to perform the duties of business agent of the local, with authority to collect dues and assessments and to certify to employers the status of the members of the local; that he be authorized to employ an auditor, that the books be audited, that the auditor be directed to set up and place in operation a set of books "as approved in Section 9, Article 5154a"; that the receiver be authorized to assemble the members of the local for the purpose of electing officers and to certify to the court the names of the officers elected; that McKinney and George James be enjoined from

representing themselves as officers of the local and exercising control over its business affairs, "including the assumption of authority to place members of said local on jobs as business agents of such local"; that defendants be restrained from representing to contractors and employers that plaintiffs are not in good standing as members of the local and International, from demanding or receiving dues and assessments as officers of the local; from filing charges against members based upon their joining in this suit as plaintiffs, from demanding that plaintiffs withdraw from this suit as a condition precedent to being sent out on jobs, and from otherwise discriminating against and prejudicing the rights of plaintiffs for joining in this suit.

In the alternative, plaintiffs prayed that if the court did not appoint a receiver that he appoint an auditor, as provided in Rules of Civil Procedure, Rule 172, and that defendants be enjoined from preventing the members of the local from holding regular and open meetings as the members may desire and in peaceably assembling and transacting the business of the local and electing officers "according to established parlimentary rules and in conformity with Art. 5154a * * *." That if the court does not appoint either a receiver or an auditor, that defendants be commanded to deposit in the registry of the court all of the records of the local so that plaintiffs may cause an audit to be made prior to trial on the merits.

Plaintiffs prayed that upon final hearing the injunctive relief prayed for be made permanent; that the local recover from defendants title and possession of all of its property; that plaintiffs recover from defendants title and possession of the property of the local to be held in trust for the use and benefit of the local and all its members; that said property be delivered to the officers of the local, when elected and qualified, etc.

Section one of Article 5154a provides that because the activities of labor unions affect the economic condition of the country, entering into practically every business, it is the sense of the Legislature that such organizations affect the public interest and are charged with a public use. "The working man, unionist or non-unionist, must be protected. The right to work is the right to live." It is declared to be the policy of the state to regulate the activities and affairs of labor unions and their representa-

tives "in the manner, and to the extent hereafter set forth." Section 3 provides that every labor union shall file annually with the Secretary of State a report containing the name and address of the union and the officers of its local, state, national and international union with which it is affiliated, also, a complete financial statement verified by some regularly selected officer of the union. It provides that such reports shall be available only to the Secretary of State, the Commissioner of Labor Statistics, and the Attorney General, "but shall also be open to grand juries and judicial and quasi-judicial inquiries in legal proceedings." Section 4 provides that all officers and representatives of a labor union shall be elected by at least a majority vote of the members present and participating. Section 9 provides that all labor unions shall keep accurate books of accounts, itemizing all receipts and expenditures, showing the sources and purposes. It provides that any member of a labor union shall be entitled at all times to inspect the books of the union and that any enforcement officer upon demand, subject to the approval of the Attorney General, shall at all reasonable times have a right to inspect the records. It further provides "such books, records, and accounts shall also be open to grand juries and judicial and quasi judicial inquiries in legal proceedings." Section 10 is entitled "Members Rights." It provides that it is unlawful for a labor union to expel any member, except for good cause, upon a fair and public hearing by and within the organization, after due notice and an opportunity to be heard on specific charges preferred; that "any Court of competent jurisdiction upon *his* petition therefor, shall order reinstatement of any member * * * who shall be expelled without good cause." (Italics ours.) Section 11 provides the penalties for violation of the act by "any labor union" and that the penalties shall be recovered "in the name of the State, acting through an enforcement officer * * *." It further provides that any officer, or organizer, of a labor union who violates any provision of the act shall be deemed guilty of a misdemeanor. Section 12 provides: "The District Courts * * * and the Judges thereof shall have full power, authority and jurisdiction, upon the application of the State of Texas, acting through an enforcement officer" to issue injunctions and other writs appropriate for the enforcement of the act. Section 13 makes it the duty of

the Attorney General, and the District and County Attorneys within their jurisdictions, "to prosecute any and all criminal proceedings and to institute and maintain any and all civil proceedings herein authorized for the enforcement of this Act."

The general rule is that courts will not interfere with the internal management of a labor union in behalf of any member thereof. However, there are exceptions as well established as the rule. Where a member's property rights and his right to make a living are involved, he may invoke the aid of the courts and obtain relief. Grand International Brotherhood of Locomotive Engineers v. Marshall, Tex. Civ.App., 146 S.W.2d 411, 412, writ refused; Gaines v. Farmer, 55 Tex.Civ.App. 601, 119 S.W. 874; Willis v. Davis, Tex. Civ.App., 233 S.W. 1035; Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; American Legion et al. v. Big Spring Veterans, Inc., Tex.Civ.App., 73 S.W.2d 594, 597; Knights and Daughters of Tabor v. Reid, Tex.Civ. App., 270 S.W. 241, 244; 31 Am.Jur. 864 et seq.; 5 Tex.Jur. 141. Where such rights are involved, the courts will interfere to ascertain whether or not the proceedings within the union were pursuant to the rules and laws of the union, and whether there was anything therein in violation of the laws of the land. 5 Tex.Jur. 140. In considering the constitution and by-laws of an association as a contract between the parties, the author of 7 C.J.S., Associations, § 11, p. 34, says, "The articles of association or constitution and the by-laws so agreed upon constitute a contract which the courts will enforce both as between the members themselves and as between the association on one side and the individual members on the other, and their rights and powers, and duties and liabilities, are measured accordingly." He cites Brown v. Harris County Medical Soc., Tex.Civ. App., 194 S.W. 1179. The courts have jurisdiction at the suit of some members of an association to restrain a person illegally elected to an office within the organization from acting as such. 7 C.J.S., Associations, § 19, p. 46. "In accordance with general rules, a receiver may be appointed to conserve the assets of an association." 7 C.J.S., Associations, § 9, p. 31; Payne v. Little Motor Kar Co., Tex. Civ.App., 266 S.W. 597. In Gurtov v. Williams, Tex.Civ.App., 105 S.W.2d 328, writ dismissed, the court said that the right of members of a labor union to earn their living is a property right which a court of equity in a proper case has jurisdiction to protect against irreparable injury. See also 4 Am.Jur. 466 et seq.; 7 C.J.S., Associations, § 34, p. 79 et seq.; McCantz v. Brotherhood of Painters, etc., Tex.Civ. App., 13 S.W.2d 902; American Legion v. Big Spring Veterans, Inc., Tex.Civ.App., 73 S.W.2d 594, 597; Knights and Daughters of Tabor v. Reid, Tex.Civ.App., 270 S.W. 241, 244; Nissen v. International Brotherhood etc., 229 Iowa 1028, 295 N.W. 858; and Webster v. Rankins, Mo.App., 50 S.W.2d 746.

Briefly stated, we construe plaintiffs' petition as alleging, among other things, that defendants removed from their offices the vice-president, who was the acting president, and the secretary-treasurer of the local. That defendants ousted the duly elected business manager, plaintiff D. C. Hood; and deprived him of the emoluments of that office. That defendants prevented meetings and election of officers by members of the local; that they had converted and were converting the property of the local, which was held in trust by some of the defendants for the benefit of all members of the local; that they were not keeping records which showed the condition of the local; that defendants are extorting monthly dues from plaintiffs, but, unless enjoined, will prevent them from obtaining or retaining employment and expel them from both the local and International. All of which, plaintiffs allege, is in violation of the constitution and by-laws of the local and International.

Under the facts alleged by plaintiffs, which, in disposing of defendants' plea in abatement, we must accept as true, they have a right to resort to the courts to protect their property rights and to enjoin the alleged unlawful acts of defendants which would prevent them from working and earning a living. We find nothing in Art. 5154a which attempts to deprive them of that right and to provide that redress, under such circumstances, may be had only in a suit brought by an enforcement officer. We may assume that the statute requires that suits for penalties provided by the act must be brought by an enforcement officer and in the name of the State of Texas. We may further assume that a suit brought in the name of the state for injunctions and other writs sought by the State for the purpose of enforcing the act must be brought by an enforcement officer. Such assump-

tions do not preclude a holding that members of a labor union may maintain a suit in their own names for the protection and preservation of their property rights. We find no provision in the statute that either expressly or impliedly attempts to deprive an individual of a right so long recognized. On the contrary, the statute expressly recognizes the right of a member of a union to maintain a suit in his own name to compel reinstatement when he has been unlawfully expelled from a union. The idea that all such suits must be brought by an enforcement officer is repudiated by the plain language of the statute.

We are of the opinion that defendants' plea in abatement should not have been sustained in the absence of a hearing. The judgment is reversed and the cause remanded.